**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:05-CR-0157** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **KWAME DWUMAAH,** | : | |
| | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM**

Presently before the court is a petition for a writ of error *coram nobis* (Doc. 114) filed by *pro se* petitioner Kwame Dwumaah ("Dwumaah"). Dwumaah fully served his sentence and now seeks to vacate his conviction to avoid deportation. In a previous memorandum opinion (Doc. 116), the court determined that it could issue a writ of error *coram nobis* if Dwumaah's allegations of ineffective assistance of counsel are true. On October 16, 2012, the court conducted an evidentiary hearing to determine the truth of Dwumaah's allegations. (Doc. 133). Following the hearing, the court ordered supplementary briefing. (Doc. 131). For the reasons set forth below, the court will grant Dwumaah's petition for a writ of error *coram nobis*.

**I.    Background and Procedural History**

Dwumaah was born in 1960 in Ghana, Africa. (Doc. 1 ¶ 1). On December 9, 1989, Dwumaah entered the United States on a non-immigrant Visa, and remained in the country illegally after his Visa expired. (Doc. 94–2, at 3–4). From 1997 to 2001, Dwumaah enrolled in classes at the Community College of Philadelphia and Villanova University. (Id. at 4) He eventually obtained a nursing degree. (Id.)

Dwumaah, using the alias "Simon Dwumaah," obtained student loans from the federal government to help finance this degree. (Id.)

On or about December 31, 1998, Dwumaah married a United States citizen, and in April, 1999 he applied to the United States Immigration and Naturalization Service ("INS") for Permanent Resident status. (Id.) In December, 1999, the INS granted Dwumaah Conditional Permanent Residency status based upon his marriage. (Id. at 4; Doc. 1 ¶ 19).

In June 2004, the United States Department of Homeland Security ("DHS") determined that Dwumaah's marriage was fraudulent. (Doc. 94–2, at 4). In November, 2004, the DHS initiated proceedings to remove Dwumaah from the country pursuant to 8 U.S.C. § 1227(a)(1)(D)(i). (Id.) On April 27, 2005, a federal grand jury sitting in the Middle District of Pennsylvania returned a twenty-eight count indictment charging Dwumaah with fifteen counts of Mail Fraud, in violation of 18 U.S.C. § 1343, and thirteen counts of Higher Education Resources Fraud, in violation of 20 U.S.C. § 1097(a). (Id.; Doc. 1). Attorney John Abom ("Attorney Abom") was appointed to represent Dwumaah in the criminal matter. Dwumaah also privately retained Attorney Wayne Sachs ("Attorney Sachs") to assist with his immigration proceedings.

On August 30, 2005, Dwumaah pleaded guilty to one count of Theft of Public Monies in violation of 18 U.S.C. § 641 pursuant to a one count misdemeanor information. (Doc. 32; Doc. 33; Doc. 37). On January 19, 2006, the court sentenced

Dwumaah to five months imprisonment and one year of supervised release. (Doc. 43). The court also ordered Dwumaah to pay $75,192 in restitution. (Id.)

Following Dwumaah's guilty plea, the DHS amended its Notice to Appear to include additional grounds for removal, including falsely claiming United States citizenship under 8 U.S.C. § 1227(a)(3)(D)(i). (Id. at 5). Ultimately, an immigration judge determined that Dwumaah was not removable under the government's original charge (fraudulent marriage) but was removable under the amended charge of falsely claiming United States citizenship. (Id.) The immigration judge noted that Dwumaah's guilty plea did not necessarily establish Dwumaah as removable for falsely claiming United States citizenship, but the plea appears to be the chief piece of circumstantial evidence used in the case against Dwumaah. See In re Kwame Dwumaah, File AO 75 462 772, 2010 WL 1975978 at *1 (B.I.A. Apr. 29, 2010).

On September 18, 2007, Dwumaah filed a petition for a writ of error *coram nobis*. (Doc. 71). He alleged that counsel did not fully inform him of the deportation consequences of his plea. (Id.) The court subsequently issued an order denying the petition on procedural grounds because Dwumaah was still in federal custody and the proper vehicle to attack his conviction was a motion to vacate judgment under 28 U.S.C. § 2255.[1] (Doc. 79). Pursuant to this order, on February 26, 2007,

---

[1] Dwumaah was no longer in prison when he filed his September 18, 2007 motion but he was still under supervised release. (Doc. 79). Supervised release qualifies as custody for the purposes of 28 U.S.C. § 2255. United States v. Dent, 135 F. App'x 532, 534 (3d Cir. 2005).

Dwumaah filed a § 2255 motion to vacate judgment. (Doc. 84). Dwumaah once again alleged ineffective assistance of counsel, but only vaguely, stating that "his attorney . . . gave him wrong information that led him to plead guilty." (Id. ¶ 11). The court denied Dwumaah's § 2255 motion on December 5, 2007. (Doc. 93).

On April 23, 2010, Dwumaah filed a second § 2255 motion to vacate, asking the court to reconsider his conviction in light of the Supreme Court's ruling in Padilla v. Kentucky, 130 S.Ct. 1473 (2010), decided on March 31, 2010. (Doc. 94). Padilla affirmatively established that an attorney's failure to inform his client of likely deportation consequences of a guilty plea satisfies the first prong of the Strickland test for an ineffective assistance of counsel claim. Dwumaah elaborated on his earlier claims of ineffective assistance of counsel, stating that his counsel "misinformed him that if he pled guilty to theft of public monies he would not be deported. . . [t]o Dwumaah['s] surprise[] he is [being] removed under [8 U.S.C. § 1227(a)(3)(D)]." (Id. at 1).

On June 2, 2010, the court denied Dwumaah's motion, noting that a § 2255 motion to vacate was inappropriate because Dwumaah had already filed such a motion and was no longer in custody. (Doc. 100). The court further stated that, even in light of Padilla, the second prong of the Strickland test was not satisfied, because Dwumaah could not show that he would have been acquitted had he gone to trial rather than plead guilty. (Id.); see Padilla, 130 S.Ct. at 1478; see also Strickland v. Washington, 466 U.S. 668 (1984). The court's determination was made under the standard articulated in United States v. Nino, 878 F.2d 101, 105 (3d Cir.

4

1989). Finally, the court noted that Dwumaah's only remaining remedy was a petition for a writ of error *coram nobis*, but cautioned that such a writ would only be granted in extraordinary cases. (Doc. 100, at 2 n.3); <u>see</u> <u>United States v. Osser</u>, 864 F.2d 1056, 1059 (3d Cir. 1988).

On September 6, 2011, Dwumaah filed the instant motion (Doc. 114), a petition for a writ of error *coram nobis*, seeking to vacate his sentence in light of both <u>Padilla</u> and <u>United States v. Orocio</u>, 645 F.3d 630 (3d. Cir. 2011). <u>Orocio</u> abrogated the Third Circuit's previous holding in <u>Nino</u> and, according to Dwumaah, alters the analysis of the second prong of the <u>Strickland</u> test in the present case.[2] (Doc. 114); <u>see</u> <u>Orocio</u>, 645 F.3d at 644. Dwumaah filed an Affidavit (Doc. 115) in support of his petition on November 14, 2011. (Doc. 115). Dwumaah alleges that his counsel failed to inform him that he would be deported if he pleaded guilty and that had he known of the certainty of deportation, he would have rejected the plea bargain. On August 20, 2012, the court issued a fourteen page memorandum and order (Doc. 116) holding that Dwumaah's allegations of ineffective assistance of counsel may provide an appropriate basis for a writ of error *coram nobis*. Thereafter, the court appointed counsel for Dwumaah. (Docs. 123, 124).

---

[2] The Supreme Court recently heard arguments in <u>Chaidez v. United States</u>, No. 11-820, on whether the holding in <u>Padilla</u> applies retroactively to defendants, like Dwumaah, whose convictions became final before its announcement. Pending the Supreme Court's decision, the court is bound by the Third Circuit's opinion in <u>Orocio</u>, which found that <u>Padilla</u> is retroactively applicable to such defendants. 645 F.3d at 637-41.

On October 16, 2012, the court conducted an evidentiary hearing to determine the truth of Dwumaah's allegations of ineffective assistance of counsel. (Doc. 133). Attorney Abom testified that he defended Dwumaah in concert with Dwumaah's immigration attorney, Wayne Sachs of Philadelphia. Attorney Abom relied upon Attorney Sachs "because admittedly immigration law is not [Abom's] area of expertise." (Doc. 133 at 12). Attorney Abom informed Dwumaah that his guilty plea could potentially result in deportation if the immigration court found that his offense met the definition of a crime involving moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(i). (Doc. 133, at 14-15, 27-28, 33-34). Attorney Abom stated that his goal was to avoid a guilty plea for an offense that would make Dwumaah automatically removable, such as a crime that could be construed as an aggravated felony pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). (Id. at 10, 14). He also testified that he was not aware of the deportation consequences of falsely claiming United States citizenship under 8 U.S.C. § 1227(a)(3)(D)(i), and that he did not advise Dwumaah as to the potential ramifications of this provision on his guilty plea. (Id. at 15-22).

Dwumaah also testified at the evidentiary hearing. He stated initially that Attorney Abom told him that if he pleaded guilty he would not be deported. (Id. at 40, 42, 47-48, 50, 52). He later testified he understood that there were potential deportation consequences to his guilty plea and acknowledged saying so to the court at the change of plea hearing. (Id. at 58). Dwumaah also testified that he only pleaded guilty to protect his immigration status and that he would not have done so if Attorney Abom had advised him of the falsely claiming citizenship provision. (Id.

6

at 50-52). Following the hearing, the court ordered supplementary briefing. (Doc. 131). This petition is fully briefed and ripe for disposition.

## II.  <u>Legal Standard</u>

A writ of error *coram nobis* is available to a criminal defendant no longer in custody as a means to vacate his conviction. <u>Cabrera v. United States</u>, Civ. No. 10-2713, 2011 WL 2784419, at *1 (D. N.J. July 12, 2011). The standard for granting a writ of error *coram nobis* is higher than the standard applicable for direct appeal or for habeas corpus relief under 28 U.S.C. § 2255. <u>United States v. Stoneman</u>, 870 F.2d 102, 106 (3d Cir. 1989). To attain a writ of error *coram nobis*, Dwumaah must show that (1) a fundamental defect, such as ineffective assistance of counsel, occurred; (2) he is suffering from continuing consequences of his conviction; (3) there was no remedy available at the time of trial; and (4) sound reasons exist for his failure to bring the present motion earlier. <u>Cabrera</u>, 2011 WL 2784419, at *1. The court previously found that Dwumaah's petition meets the latter three requirements, (<u>see</u> Doc. 116), and will focus its current analysis on whether a fundamental defect, such as ineffective assistance of counsel, occurred.

## III.  <u>Discussion</u>

It is well established that ineffective assistance of counsel may constitute a fundamental defect for the purposes of a writ of error *coram nobis*. <u>United States v. Rad-O-Lite of Philadelphia, Inc.</u>, 612 F.2d 740, 744 (3d Cir. 1979). To establish ineffective assistance of counsel, a defendant must satisfy both prongs of the <u>Strickland</u> test by showing that: (1) counsel's representation was objectively

unreasonable; and (2) counsel's deficient performance was prejudicial.  See Roe v.

Flores-Ortega, 528 U.S. 470, 476-77 (2000) (citing Strickland, 466 U.S. at 668).  The

court finds that Dwumaah's counsel unconstitutionally failed to advise Dwumaah

that the offense to which he ultimately pleaded guilty would result in automatic

removal from the United States.  His counsel's errors were prejudicial because

Dwumaah would not have pleaded guilty and would have insisted on going to trial if

Dwumaah had known that his guilty plea would result in automatic removal from

the United States.

### 1.    First Prong of the Strickland Test

The court must first determine whether Attorney Abom provided Dwumaah

with effective assistance of counsel.  The Supreme Court determined in Padilla that

a criminal defense attorney must inform her client when a risk of deportation would

accompany a criminal conviction.  130 S. Ct. at 1482.  Moreover, "when the

deportation consequence [of a conviction] is truly clear, . . . the duty to give *correct*

advice is equally clear."  Id. at 1482 (emphasis added).  Thus, in cases where the law

is sufficiently "succinct and straightforward," defense attorneys are required to

advise their non-citizen clients of the specific removal consequences of their guilty

plea, rather than simply advising the clients of a general risk or possibility of

removal.  Id. at 1483; see also id. at 1494 (Alito, J., concurring) ("Accordingly,

unreasonable and incorrect information concerning the risk of removal can give

rise to an ineffectiveness claim."); Gudiel-Soto v. United States, 761 F. Supp. 2d 234,

238 (D.N.J. 2011) (holding that "[a]n attorney's complete failure to provide advice

8

and 'affirmative misadvice' both qualify as ineffective assistance of counsel" under

Padilla).

For non-citizens, deportation is an almost-certain consequence of certain criminal convictions. See 8 U.S.C. § 1227(a)(2)(A)(iii) (aggravated felonies); 8 U.S.C. § 1227(a)(3)(D)(i) (falsely claiming United States citizenship); 8 U.S.C. § 1227(a)(2)(A)(i) (crimes involving moral turpitude). The deportation statute at issue in Padilla was 8 U.S.C. § 1227(a)(2)(B)(i), which provides that any alien convicted of an offense relating to a controlled substance, other than possession of a small amount of marijuana, is deportable. In that case, the defense attorney did not advise his client that he would face deportation proceedings as a result of pleading guilty to a controlled substance offense. 130 S. Ct. at 1478. The defense attorney also provided incorrect advice by stating that the defendant did not have to be concerned about the deportation consequences of his plea. Id. The Padilla Court reasoned that defense counsel should have determined that the guilty plea would result in automatic deportation simply from reading the text of the statute involved, because the statute does not address "some broad classification of crimes but specifically commands removal for all controlled substances convictions . . . ." Id.

The Padilla majority also cited Justice Alito's concurrence as providing examples of immigration statutes that are not "succinct and straightforward" and which require defense counsel to merely advise of the risk of deportation. Id. Justice Alito cited the immigration statutes governing aggravated felonies and crimes involving moral turpitude as two examples of statutes governing a "broad

category of crimes" where the immigration consequences of a guilty plea are not immediately clear.  Id. at 1488 (Alito, J., concurring).  However, Justice Alito did not mention 8 U.S.C. § 1227(a)(3)(D)(i), the immigration statute governing crimes involving falsely claiming United States citizenship.

Dwumaah and his attorneys were aware that a sentence of one year or greater in his case would render Dwumaah automatically deportable under the removal provision concerning aggravated felonies, 8 U.S.C. § 1227(a)(2)(A)(iii). (Doc. 133, at 10-13); see 8 U.S.C. § 1101(a)(43)(G) (defining aggravated felony to include "a theft offense. . . for which the term of imprisonment is at least one year"). Dwumaah agreed to the plea bargain specifically to ensure his sentence was less than one year.  (Doc. 40, at 8).  In Dwumaah's Sentencing Memorandum (Doc. 40), he requests that the court "sentence him to less than 12 months, thereby allowing [him] to remain in the country. . . ."  (Id.)  Attorney Abom was aware, and advised his client,[3] that Dwumaah could still be subject to deportation if his crime under 18 U.S.C. § 641 met the definition of a crime of moral turpitude under 8 U.S.C. § 1227(a)(2)(A)(i).  (Doc. 133, at 14-15, 27-28, 33-34).  Relying ostensibly upon the advice of immigration counsel, Attorney Abom was not made aware of the automatic removal provision for falsely claiming United States citizenship under

---

[3] Any statements of Dwumaah to the contrary are simply not credible. His testimony at the evidentiary hearing was, at various times, confusing and inconsistent.  Dwumaah stated initially that he believed that if he pleaded guilty he would not be deported, (Doc. 133, at 40, 42, 47-48, 50, 52), but he later said he understood that there were deportation consequences to his guilty plea (Doc. 133, at 58).

§ 1227(a)(3)(D)(i), and he never advised Dwumaah as to its deportation implications in his case. (Doc. 133, at 15-16, 20, 22).

Thus, the court must determine whether Attorney Abom rendered ineffective assistance by advising Dwumaah that deportation was a mere possibility under one statutory provision when, in reality, it was virtually automatic under another statutory provision. Pursuant to <u>Padilla</u>, Attorney Abom satisfied the standards typically borne by defense counsel when he informed Dwumaah that a risk of deportation would accompany his guilty plea. Ironically, however, it is Attorney Abom's focus on the deportation consequences of Dwumaah's guilty plea that heightens the standards to which he must be held. What makes the instant case so compelling is the very fact that Attorney Abom affirmatively sought to negotiate a plea which would avoid deportation, yet failed to recognize (presumably because of a disconnect with immigration counsel) the virtual certainty of deportation under a separate section of the Immigration and Nationality Act. <u>See</u> § 1227(a)(3)(D)(i).

Attorney Abom is to be commended for considering the deportation issue which his client faced, particularly in light of the fact that <u>Padilla</u> was not on the books at the time of his client's plea. It is quite clear to the court that he endeavored to provide his client with appropriate representation based upon evolving standards of conduct for criminal defense counsel faced with immigration issues. That this effort included consultation with immigration counsel is worthy of

further commendation. Yet the court must address what appears to be "a slip twixt the cup and the lip."[4]

In some cases, the determination of whether an offense qualifies as deportable under § 1227(a)(3)(D)(i) may be so complex that the defense attorney may satisfy his burden simply by advising a non-citizen client that pending criminal charges carry the risk of adverse immigration consequences. However, in the case *sub judice*, the court concludes the deportation consequences under 8 U.S.C. § 1227(a)(3)(D)(i) were so clear that Attorney Abom was required to advise Dwumaah that his guilty plea would almost certainly result in deportation.[5] The information includes several explicit allegations that Dwumaah "falsely represented

---

[4] "There's many a slip 'twixt the cup and the lip" is an ancient proverb, often attributed to Homer. JOHN BARTLETT, BARTLETT'S FAMILIAR QUOTATIONS 241 n.2 (Justin Kaplan ed., 17th ed., Little, Brown & Co. 2002) (1855).

[5] To the extent that the court's reasoning conflicts with Hutchinson v. United States, 2011 WL 5041002 (M.D. Pa. Oct. 24, 2011), the court finds it to be factually distinguishable. The Hutchinson court held that "[n]either Padilla nor Orocio require an attorney to advise his client of an absolute certainty of deportation at the plea stage." 2011 WL 5041002, at *8; see also United States v. Fazio, Crim. A. No. 09-325, 2011 WL 6780926, at *8 (W.D. Pa. Dec. 27, 2011) (same). The Hutchinson court found that defense counsel provided effective assistance when he advised his client of the "very high" likelihood of deportation as a result of his guilty plea for a controlled substance offense. Id. Defense counsel explained that he did not tell his client that deportation was certain because "the contingencies of life are various and they're measured by different degrees." Id. The court concluded that defense counsel correctly advised his client as to the consequences of his guilty plea. Unlike the attorney in Hutchinson, Attorney Abom supplied Dwumaah with erroneous advice. Attorney Abom informed Dwumaah that his guilty plea would provide his immigration attorney with a reasonable argument to avoid deportation, and he failed to direct his attention to the removal statute concerning false claims of United States citizenship.

that he was a U.S. Citizen." (Doc. 32, ¶¶ 8-11). Thus, defense counsel, and especially immigration counsel, should have recognized that Dwumaah's plea agreement would almost certainly result in deportation; careful examination of the statutory language juxtaposed with the allegations set forth in the information would leave little doubt as to this outcome.

The court recognizes that immigration law is fraught with ambiguities and complexities. In the face of <u>Padilla</u>, ineffective assistance of counsel claims based on the failure to provide correct deportation advice will be an evolving area of law. In many respects, Attorney Abom's professional conduct was ahead of the curve. One might expect that relying on the advice of immigration counsel would be fail-safe. But even that prudent decision may become problematic when there is a disconnect between immigration counsel and defense counsel, and immigration counsel has not formally entered his appearance. Based upon the unique circumstances of this matter, the court is compelled to find that Dwumaah did not receive effective assistance of counsel and therefore his petition satisfies the first prong of the <u>Strickland</u> test.

**2.**      <u>**Second Prong of the Strickland Test**</u>

The court must now determine whether Attorney Abom's deficient performance prejudiced Dwumaah. <u>Padilla</u> did not address the second prong of the <u>Strickland</u> test in the context of criminal defendants facing deportation, but the Third Circuit addressed the issue in its recent decision in <u>Orocio</u>. The Third Circuit held that "the defendant must show that there is a reasonable probability that, but

13

for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Orocio, 645 F.3d at 643 (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). The court must find that a decision to reject a plea bargain would have been rational under the circumstances. Id. (quoting Padilla, 130 S.Ct. at 1485). The Third Circuit noted that alien defendants are most often concerned with remaining in the United States and that many would go to trial and hope for an acquittal rather than plead guilty to an offense that would result in automatic removal. Id.

In Orocio, the defendant faced removal following pleading guilty to a drug charge. Id. at 634. Mr. Orocio entered into the plea bargain on the advice of his counsel, who did not inform him that his plea would likely result in his removal from the United States. Id. Mr. Orocio was sentenced to a term of imprisonment of time served and a two year term of supervised release. If he went to trial, he faced a potential prison sentence of ten years. Id. The Third Circuit ruled that, despite the long jail term Mr. Orocio likely avoided by entering into a plea deal, Mr. Orocio could have rationally rejected the plea deal and decided instead to pursue an acquittal at trial. Id. at 645.

Unlike Orocio, Attorney Abom did inform Dwumaah that deportation would still be a possibility as a result of his guilty plea. (Doc. 133, at 14-15, 27-28, 33-34). However, Dwumaah was unaware that his deportation would be imminent under § 1227(a)(3)(D)(i) for falsely claiming United States citizenship. Dwumaah testified that he only pleaded guilty to protect his immigration status and that he would not have done so if Attorney Abom had advised him of the falsely claiming citizenship

14

provision.  (Id. at 50-52).  The court finds this testimony to be credible.  Dwumaah could have made a rational decision to reject the plea bargain, demand a trial, and pursue the chance of an acquittal if he knew that deportation was virtually certain either way.  (See Doc. 133 at 50-52).

Dwumaah supports this conclusion with far more than self-serving statements: the record reflects that all negotiations leading to his guilty plea were focused on avoiding automatic deportation under §1227(a)(2)(A)(iii).  Attorney Abom testified that his entire focus was to avoid a guilty plea for an offense that would make Dwumaah automatically removable.  (Doc. 133, at 14).  In fact, Attorney Abom and Dwumaah rejected an earlier plea offer from the government because it would have made Dwumaah automatically removable.  (Doc. 54, at 4).  Dwumaah's Sentencing Memorandum explicitly states that, "[t]he Defendant also respectfully requests that This Honorable Court sentence Kwame Dwumaah to less than 12 months, thereby allowing Mr. Dwumaah to remain in the country . . . ."  (Doc. 40, at 9).  With great candor, Attorney Abom acknowledged that, had he been aware of the falsely claiming citizenship provision, he would have approached Dwumaah's guilty plea differently.  (Doc. 133, at 16).

The government contends that the court's warnings to Dwumaah during his change of plea hearing mitigated any potential prejudice.  The Third Circuit in Orocio rejected a similar argument.  645 F.3d at 646.  At the change of plea hearing, Mr. Orocio acknowledged the court's statement that the plea agreement is "not binding upon any civil authorities such as the Internal Revenue Service and it's not

binding upon the Immigration and Naturalization Service." <u>Id.</u> At the sentencing hearing, the court advised Mr. Orocio "to cooperate with Immigration and Customs Enforcement to resolve any problems with your status in this country" and that "[i]f you are deported . . . you cannot come back to this country without first getting the written permission of the Attorney General of this country." <u>Id.</u> The Third Circuit reasoned that the trial court's warning was sufficient only to alert the defendant that his plea was not binding on other agencies and was not sufficient to alert him of the immigration consequences of his guilty plea. Additionally, the <u>Orocio</u> court reasoned that the trial court's advice at sentencing was too generalized and untimely to alert the defendant that his deportation was highly probable as a result of his guilty plea. <u>Id.</u> <u>See also</u> <u>Cabrera v. United States</u>, Civ. A. No. 10-2713, 2011 WL 2784419, at *2 (D.N.J. Jul. 12, 2011) ("The fact that Cabrera was warned by the Government at her plea hearing that the plea agreement did not bind 'any other agency, including the IRS or the Immigration and Naturalization Service from initiating a civil proceeding,' is obviously insufficient to put Cabrera on notice of the likely collateral consequence of deportation."). <u>But</u> <u>see</u> <u>Rosales v. Artus</u>, Civ. A. No. 10-2742, 2011 WL 3845906 (E.D.N.Y. Aug. 30, 2011) ("Thus, even if petitioner's counsel had incorrectly informed petitioner that he could not be deported, that error was rectified by the trial court's questioning during petitioner's plea allocution.").

In the case *sub judice*, the court made it clear to Dwumaah that his guilty plea *could* result in deportation:

THE COURT: Mr. Daniel [AUSA], let me ask you, in light of this defendant's citizenship with the country of Ghana, are there any deportation ramifications to the misdemeanor plea?

MR. DANIEL: Your Honor, there are, and in fact I can tell you that Mr. Dwumaah is currently facing a deportation proceeding, a hearing I believe, in – later in October of this year?

MR. ABOM: That's correct.

MR. DANIEL: That hearing, however, was not specifically related to the filing of this charge. That hearing was based upon an INS determination that Mr. Dwumaah was granted permanent residency status via fraud, which is sort of connected to the facts of this case. I cannot tell you specifically what the, what the effects of the plea to this particular charge will be on his deportation status. Certainly there will be adverse consequences, but I don't think it's a guarantee that Mr. Dwumaah will be deported just based upon the fact of his plea to this charge.

THE COURT: All right. Mr. Dwumaah, do you understand that there are consequences and potential adverse ramifications to your guilty plea with respect to your current status in the United States and that there is a possibility in light of the representations that have been made by Mr. Daniel that this guilty plea and the fact of this guilty plea may be taken into consideration during your deportation proceedings?

DWUMAAH: Yes, Your Honor.

(Doc. 55, at 11-12). At the evidentiary hearing, Dwumaah acknowledged that he told the truth to the court during the change of plea hearing. (Doc. 133, at 57-58).

Although the court's warnings were far more direct than the warnings given in Orocio or Cabrera, the court never warned Dwumaah that his guilty plea would make deportation a virtual certainty. Indeed, the court's warnings were not inconsistent with Attorney Abom's advice and counsel. Thus, the court's warnings

were not sufficient to mitigate the prejudice of Attorney Abom's incorrect advice. Dwumaah's petition satisfies the second prong of the <u>Strickland</u> test.

**IV.** <u>**Conclusion**</u>

      Dwumaah's petition satisfies all four requirements for a successful petition for writ of error *coram nobis*. Accordingly, the court shall vacate his conviction. An appropriate order follows.

          <u>S/ Christopher C. Conner</u>
          CHRISTOPHER C. CONNER
          United States District Judge


Dated:      February 1, 2013

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:05-CR-0157** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **KWAME DWUMAAH,** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

AND NOW, this 1st day of February, 2013, upon consideration of the petition for writ of error *coram nobis* (Doc. 114) filed by Kwame Dwumaah, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Kwame Dwumaah's petition for writ of error *coram nobis* (Doc. 114) is GRANTED.

2. Kwame Dwumaah's conviction is VACATED and SET ASIDE.

3. The court shall schedule a status conference with the parties to discuss the implications of the court's ruling.


     S/ Christopher C. Conner     
CHRISTOPHER C. CONNER
United States District Judge